IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA,

ANDREW R. LOPEZ,

    Petitioner,                   No. CIV-S-02-2559 GEB KJM P

    vs.

WARDEN, CALIFORNIA STATE
PRISON, CORCORAN, et al.,

    Respondents.                FINDINGS AND RECOMMENDATIONS

/

        Petitioner is a California prisoner proceeding with an application for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges a prison disciplinary proceeding which occurred in 2000 and resulted in petitioner's losing ninety days of good conduct sentence credit.

I. Standards For Granting Habeas Relief

        An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any

/////

/////

/////

1

claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA). See Ramirez v. Castro, 365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did not address the merits of petitioner's Eighth Amendment claim).[1] Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d). Lockyer, 538 U.S. at 71 (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by § 2254(d)). It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

/////

/////

/////

---

[1] In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals held in a § 2254 action that "any independent opinions we offer on the merits of constitutional claims will have no determinative effect in the case before us . . . At best, it is constitutional dicta." However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees. Title 28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation of the Constitution before he or she may obtain habeas relief. See Lockyer, 538 U.S. at 70-71; Ramirez, 365 F.3d at 773-75.

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919 (2003). Where, as in this case, the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law,[2] the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). In other words, the court assumes the state court applied the correct law, and

---

[2] Petitioner indicates his claims were denied for failure to exhaust administrative remedies at the Superior Court level. Pet. at consecutive page 5. (All subsequent citations to the Petition are to consecutive page numbers.) Petitioner's claims were denied without comment at the California Court of Appeal and California Supreme Court. Id. Respondents concede that petitioner exhausted state court remedies prior to filing suit. Answer at 3:26.

analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

II. Arguments and Analysis

   A. Cognizable Claims

Petitioner asserts a number of violations of law arising from the disciplinary proceedings at issue. However, petitioner's rights arising under federal law concerning prison disciplinary proceedings that result in the loss of good conduct sentence credit are, generally speaking, limited to the following:

1) Advance written notice of the charges;

2) An opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense;

3) A written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action; and

4) That the findings of the prison disciplinary board be supported by some evidence in the record.

Superintendent v. Hill, 472 U.S. 445, 454 (1985).

The only cognizable claims the court gleans from petitioner's habeas petition are a challenge to the sufficiency of the evidence presented at the disciplinary proceedings at issue, and that petitioner's right to call witnesses and present evidence in his defense was violated.[3] Pet.

---

[3] Petitioner asserts in his traverse that he did not receive the "written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action" to which he was entitled. Traverse at 23. It is not appropriate to raise new claims in a traverse. Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994). Nevertheless, the written statement provided to petitioner by the hearing officer at the conclusion of the disciplinary proceedings complies with Hill. See Answer, Ex. B.

at 4; Pet., Attach. at 7-10.

Respondents suggest that this action should be dismissed because petitioner is serving an indeterminate sentence of 17-years-to-life imprisonment and he does not challenge any action of prison staff that would have an effect on the fact or length of his confinement. Answer at 6.  Their argument is not well-taken. Respondents fail to point to anything indicating that restoration of the 90 days of sentence credit taken away from petitioner at the disciplinary proceedings at issue would have no effect on the length of petitioner's sentence, for example, that petitioner would not be for eligible for parole or actually released any sooner than he would under the current circumstances.

### B. Sufficiency Of The Evidence

On January 20, 2000, petitioner was assessed 90 days loss of sentence credit for "Delaying A Peace Officer" following prisoner disciplinary proceedings. Pet., Ex. A at 4, 5. At the hearing, the hearing officer indicated the finding of guilt as to the charge was based primarily upon the following report submitted by Correctional Officer R. McKean:

> On December 10, 1999, at approximately 1635 hours, while working as "A4 Floor Officer #1" I was requested by "A-4 Control Officer" McFarland to lock up Inmate Lopez . . . and Inmate Norman . . . Prior to Officer McFarland asking me to assist him, I overheard Officer McFarland instruct both inmates, via the "Public Address System," several times to lock it up as showers were ended. As I came out of the building office, I observed both Inmate Lopez and Norman talking with an inmate in cell #225 and not paying any attention to the control officer's instructions. I proceeded up to the cell and instructed both inmates (Lopez and Norman) to lock up as it was count time. Norman started toward his cell, while Lopez stepped towards me and stopped in front of me at a very close distance. Lopez then started arguing in a very loud manner that he was talking to his brother and that he was not a punk kid to be yelled at.

/////

/////

/////

/////

> Lopez further stated that us, meaning the officers, were not being fair to the "Northern Hispanics" on showering and that he would lock it up when he was ready. As I continued to talk with Lopez in a calm manner, I could see that Lopez was very agitate[d]. Lopez would continue to argue with me and at times taking steps toward me even though I would back up one or two steps for my own safety zone. Lopez continued to argue with clenched fists down to his side and in somewhat of a "Bladed Stance" as if ready to fight. After seeing that this might possibly lead to a physical altercation, I told Lopez to finish his conversation and meet me in my office. After a few moments Lopez came into my unit office and appeared somewhat calmed down. At this time I explained to Lopez if 2 to 3 cells are let out we have 6 showers and give 10 minute showers. If 9 cells are let out (One Section), that we give 20 minutes for showers. Lopez continued to argue that we (The officers) were prejudice against "Northern Mexicans" and favoring other races by allowing more time. Lopez refused to see any reasoning in the way that we ran the "Shower Program." During the course of my conversation with Lopez, I told him that I expected no further problems over the times on the showers and I told him there would be no further episodes or displays that he put on today [December 10, 1999] as I did not want anyone injured over showers. I also explained that I expected no further posturing that could lead to a violent situation. As this conversation continued, Lopez, told me that he had a federal lawsuit against CDC and that he was not afraid of violence and if he had to he would resort to such actions if he continued to be treated unfairly.

Id.

Under Title 15, California Code of Regulations, Section 3005(b), "[i]nmates . . . must promptly and courteously obey written and verbal orders and instructions from department staff . . ." Officer McKean's report constitutes "some evidence" that petitioner delayed the officer by failing to return to his cell when McKean ordered him to do so. Petitioner attacks the credibility of Officer McKean in a number of respects. For example, he claims McKean was retaliating against petitioner for a prisoner grievance petitioner had filed against McKean, and that Officer McFarland was not actually working on December 10, 1999. Petitioner's arguments appear to presume this court can overturn the finding that he delayed a peace officer if significant evidence suggests he did not. See Pet., Attach. at 11-12; Traverse at 3-6. This is not the case. As indicated above, the standard of review for this court is whether the finding of the hearing officer can be supported by "some evidence." Nothing before the court suggests Officer

6

1  McKean's report is so devoid of credibility as to render it patently unbelievable.  See Hill, 472
2  U.S. at 455-56 ("[T]he relevant question is whether there is any evidence in the record that could
3  support the conclusion reached by the disciplinary board.").  Petitioner's claim challenging the
4  sufficiency of the evidence presented at the prison disciplinary proceedings at issue must be
5  rejected.
6       C.  Witnesses
7           Petitioner alleges he was refused certain witnesses at his disciplinary hearing.
8  Pet., Attach. at 4, ¶ 29.  However, petitioner fails to point to any evidence indicating he ever
9  made a specific request to the hearing officer that certain witnesses appear live at the disciplinary
10 hearing, and that such a request was rejected.  Rather, the hearing record indicates that Lopez was
11 given an opportunity to request the presence of witnesses at hearing, and did not.  Pet., Ex. A at
12 4.  The record also shows that petitioner was interviewed by an investigative employee before his
13 hearing.  Id. at 5-7.  When asked if he requested witnesses petitioner named inmates Richard
14 Norman and John Amaral.  Id. at 8.  In response to this, the hearing officer interviewed Norman
15 and Amaral.  Id. at 8-9.  A summary of those interviews was provided to the hearing officer in
16 the investigative report reviewed by the hearing officer before petitioner's hearing.  Based on
17 these facts, petitioner has not shown he was denied the right to present witnesses.
18      D.  Evidence
19          Petitioner asserts that the hearing officer at his disciplinary hearing failed to
20 obtain certain records despite the fact that petitioner requested that the officer consider those
21 records.  Petitioner requested that the hearing officer consider the daily log book from his
22 housing unit for December 9, 1999 through December 14, 1999.  Pet., Ex. A at 7.  According to
23 petitioner, these documents would show that "showers" did not end at 4:35 p.m. on December
24 10, 1999, nor was it "count time" then.  Pet., Attach. at 6, ¶ 48.  Petitioner also requested
25 employee assignment records for several officers including Officers McKean and McFarland for
26 December 10, 1999 through January 1, 2000.  Pet., Ex. A at 7.  Petitioner claims these documents

7

would show that Officer McFarland was not the "A-4 Control Officer" on December 10, 1999. Pet., Attach. at 6, ¶ 48.

Petitioner fails to show any reason why documents from dates other than December 10, 1999 would have been helpful to his defense and such does not appear from the record. He also fails to show any reason why employee assignment records for anyone other than Officer McFarland would have helped his defense. That the hearing officer did not consider these documents did not result in a violation of petitioner's right to due process as petitioner does not have a right to present irrelevant evidence. Pannell v. McBride, 306 F.3d 499, 503 (7th Cir. 2002).

With respect to the employee assignment records as they pertain to Officer McFarland on December 10, 1999 and the daily log book for petitioner's housing unit for that day, the court allowed petitioner to obtain these documents through discovery. July 20, 2006 Order at 8:19-9:14. It appears petitioner in fact did so. See Resp'ts' December 13, 2006 Request To Expand The Record. Petitioner fails to explain how the documents obtained support any aspect of his habeas application including his assertion there was not sufficient evidence presented at the disciplinary proceedings at issue for this court to sustain the finding of the hearing officer. Respondents have provided the court with at least some of the documents they turned over to petitioner. Id.; see also Order filed Sept. 28, 2007 (expanding record with documents provided). The court has reviewed those documents and finds they contain nothing that undermines any aspect of the January 20, 2000 findings of the hearing officer. Therefore, the hearing officer's failure to consider the evidence did not violate petitioner's right to present evidence in defense of the charges brought against petitioner.

III. Conclusion

For all of the foregoing reasons, and because petitioner has not shown he is not precluded from obtaining relief by 28 U.S.C. § 2254(d), the court will recommend that his application for writ of habeas corpus be denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within five days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 14, 2008.

_____
U.S. MAGISTRATE JUDGE

1
lope2559.157(c)